IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOY G. FRANKLIN, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:23-CV-833 |
| DUKE UNIVERSITY, THE RETIREMENT BOARD FOR DUKE UNIVERSITY, and JOHN/JANE DOES 1/10, | ) ) ) ) ) ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The plaintiff, Joy Franklin, alleges that in calculating defined pension benefits due and owing under the Employees' Retirement Plan of Duke University, the defendants are shortchanging the Plan and Duke retirees by millions of dollars in violation of the Employee Retirement Income Security Act. Ms. Franklin plausibly alleges that the defendants are not calculating her benefits in compliance with the statutory requirement for actuarial equivalence. Because the complaint state claims on behalf of the Plan for violations of ERISA's actuarial equivalence, anti-forfeiture, and fiduciary duty requirements, the motion to dismiss the claims made on behalf of the Plan pursuant to the 29 U.S.C. § 1132(a)(2) will be denied.

The motion to dismiss the plaintiff's claims under § 1132(a)(3) is held in abeyance, per a separate order staying proceedings on those claims.

## I. Plaintiff's Claims

According to the complaint, Plan participants receive pension benefits in the form of an annuity. Doc. 1 at ¶ 6. The default benefit for married participants is a 50% Joint and Survivor Annuity, or JSA, which provides the retiree with a monthly annuity for her life and, when she dies, a contingent annuity for half the amount the participant received, paid for the life of her spouse or beneficiary. *Id.* at ¶¶ 6–7. JSAs are also available at higher percentages. *Id.* at ¶ 7. A JSA benefit that pays between 50% to 100% is also known as a Qualified Joint and Survivor Annuity, or QJSA. *Id.* at ¶ 9. The monthly amount received by the participant under a JSA/QJSA is lower than the amount received by someone receiving a Single Life Annuity, since the Plan must account for paying benefits for two lives rather than one. *Id.* at ¶¶ 8–9. Ms. Franklin elected the default 50% JSA/QJSA offered by the Plan, with her husband as the beneficiary. *Id.* at ¶ 25.

Ms. Franklin alleges that when calculating the monthly benefits for JSAs and QJSAs, the defendants used an unreasonable and outdated actuarial equivalency formula that violates three ERISA provisions:

1) the actuarial equivalence requirement, *id.* at ¶¶ 100–07;

2) the anti-forfeiture rule, *id.* at ¶¶ 108–15; and

3) the defendants' fiduciary duties. *Id.* at ¶¶ 116–30.

For each violation, Ms. Franklin brings a claim under both § 1132(a)(2) on behalf of the Plan and under § 1132(a)(3) individually and on behalf of a putative class. This Order addresses only the motion to dismiss her claims made on behalf of the Plan pursuant to § 1132(a)(2). *See discussion infra* at III.

## II. Motion to Dismiss the § 1132(a)(2) Claims

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While legal conclusions "must be supported by factual allegations" that go beyond an "unadorned, the-defendant-unlawfully-harmed-me accusation," *id.* at 678–79, a plaintiff is not required to prove her case in the complaint. *See Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021). The complaint's allegations should allow "the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020). At this stage, a district court assumes the truth of the factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Twombly*, 550 U.S. at 555–56; *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

### A. Actuarial Equivalence Requirement Claim

ERISA requires that defined benefit plans "provide to married participants pension benefits 'in the form of' a QJSA." *Hamrick v. E.I. du Pont de Nemours and Co.*, No. 23-CV-238, 2024 WL 359240, at *3 (D. Del. Jan. 31, 2024); *see generally* 29 U.SC. § 1055(a)(1) (requiring that participants be offered their "accrued benefit" in the form of a QJSA). It also requires that the QJSA be the "actuarial equivalent" of the single life annuity. *See* § 1055(d)(1)(B); *Herndon v. Huntington Ingalls Indus.*, No. 19-CV-52, 2020 WL 3053465, at *2 (E.D. Va. Feb. 20, 2020).

3

Ms. Franklin alleges that she accrued a single life annuity, or SLA, benefit of $2,081.78 monthly and that the 50% JSA offered by the Plan was for $1,806.99. *See* Doc. 1 at ¶¶ 25, 85. This amount, she alleges, is not the actuarial equivalent of her SLA benefit. *Id.* at ¶ 85. More specifically, she alleges that "[b]ecause the Plan used outdated, unreasonable formulas to calculate" joint survivor annuities, "those benefits are not actuarially equivalent to the SLA Defendants offered to participants." *Id.* at ¶ 103. This error, she alleges, reduced her benefit by $64.32 per month and significantly reduced its present value. *See id.* at ¶ 85; *see generally id.* at ¶¶ 10–15, 32, 34, 44–49, 59–80 (detailed allegations about mortality tables, interest rates, and actuarial equivalence). This is sufficient to state a claim because she has alleged facts to support each element of this cause of action: that she received an accrued benefit in the form of a 50% JSA that was not the actuarial equivalent of an SLA.

The defendants open with an unclear argument discussing "normal retirement age," seeming to say that Ms. Franklin does not allege enough facts from which to infer that she has an accrued benefit. *See* Doc. 16 at 12–13. That confusing argument does not undermine the plausible allegation that Ms. Franklin has an accrued benefit.

The defendants also contend that Ms. Franklin's "claim under § 1055(d) would fail as a matter of law because that statutory provision does not impose the 'reasonable' requirement she claims." *Id.* at 13. The statute does not use the word "reasonable," *see* § 1055(d), but it also does not define the phrase "actuarial equivalence." *Stephens v. U.S. Airways Grp., Inc.*, 644 F.3d 437, 440 (D.C. Cir. 2011). Yet Congress requires actuarial equivalence, and the phrase must mean something. *See id.*

4

The implementing regulations include a reasonableness component, 26 C.F.R. § 1.401(a)-11(b)(2), and many courts have applied a "reasonable assumptions" standard at the motion to dismiss stage. *See, e.g.*, *Hamrick*, 2024 WL 359240, at *4 (noting that most courts "have concluded that § 1055(d) requires the use of reasonable assumptions when measuring actuarial equivalence" and collecting cases); *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 29 (S.D.N.Y. 2021) (observing that while ERISA does not define the term 'actuarial equivalent,' U.S. Treasury Department implementing regulations "direct employers to use 'reasonable actuarial factors'"); *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 751–54 (D. Minn. 2022) (reasoning that when the "methodology for calculating an actuarially-equivalent value is not apparent from the face of the definition of actuarial equivalence . . . courts look to practice within the field of actuarial science." (cleaned up)); *Herndon*, 2020 WL 3053465, at *2.

The defendants say that because the statute does not include a definition of "actuarial equivalence," benefit plan administrators are free to adopt any method of calculating such equivalence they want so long as the participant gets the benefits as correctly calculated under their selected method. *See* Doc. 16 at 15–16. In support, the defendants cite *Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 176–77 (D. Mass. 2022), *see* Doc. 16 at 16, and *Reichert v. Bakery, Confectionary, Tobacco Workers and Grain Millers Pension Comm.*, No. 2:23-cv-12343 (E.D. Mich. April 17, 2024). *See* Doc. 39-1. But even the *Belknap* court denied an earlier-filed motion to dismiss, noting that **"**Congress intended the 'actuarial equivalence' requirement of § 1054(c)(3) to provide some degree of protection to beneficiaries, and not to permit

5

employers to use any assumptions they chose, no matter how outmoded or inapt." *Belknap v. Partners Healthcare Sys., Inc.*, No. 19-CV-11437, 2020 WL 4506162, at *2 (D. Mass. Aug. 5, 2020). The Court respectfully disagrees with the conclusion in *Reichert*, which, as that court and others have recognized, would make the statutorily-imposed actuarial equivalence requirement meaningless. *See, e.g., Urlaub v. CITGO Petroleum Corporation*, No. 21 C 4133, 2022 WL 523129, at *6 (N.D. Ill. Feb. 22, 2022).

In the absence of an established definition that can be applied at this stage of the proceedings, the most appropriate approach is to evaluate "actuarial equivalence" later, on a more developed factual record. *See generally Adams*, 635 F. Supp. 3d at 754. Ms. Franklin has alleged specific facts to support her claim that she received an accrued benefit that was not the actuarial equivalent of an SLA and she has plausibly stated a claim under § 1055 on behalf of the Plan. To the extent that claim is made on behalf of the Plan under § 1132(a)(2), Count One, Doc. 1 at ¶¶ 100–07, may proceed.

B. **Anti-Forfeiture Claim**

Section 1053(a) of ERISA establishes that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510–11 (1981). In addition to protecting those who have reached retirement age, this provision guarantees plan participants "who have completed at least five years of service, a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions." *Masten*, 543 F. Supp. 3d at 36; *see also* § 1002(24) ("The term 'normal retirement age' means the earlier of the time a plan participant attains normal

6

retirement age under the plan, or . . . the 5th anniversary of the time a plan participant commenced participation in the plan."); § 1053(a)(2)(A)(ii) (stating that a "plan satisfies the requirements of this [non-forfeitability] clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.").

As the statute says, whether there is a forfeiture is measured against an employee's accrued benefit. *See id.* Thus, to state an anti-forfeiture claim, the plaintiff must plausibly "allege that the actuarial assumptions reduced [her] benefits as compared to the Plan's default benefit." *See Masten*, 543 F. Supp. 3d at 36.

Ms. Franklin has plausibly stated an anti-forfeiture claim under ERISA. She alleges that the Plan's default benefit is an SLA, codified in § 4.01 of the Plan. Doc. 1 at ¶ 56; Doc. 16-1 at 20–21. She also alleges that by using outdated formulas based on 50-year-old data to calculate JSA pension benefits, the "[d]efendants underestimated the value of the benefits that participants accrued, resulting in benefits that were not actuarially equivalent to Participants' age-65 SLA and, therefore, are causing an impermissible forfeiture." Doc. 1 at ¶ 111. Ms. Franklin alleges that use of the outdated formulas reduced her monthly benefit payment. *Id.* at ¶ 85.

The defendants contend that the anti-forfeiture provision "protects one thing – forfeiture of a participant's normal retirement benefit at normal requirement age" and that Ms. Franklin has not alleged facts about her age at the time her benefit commenced. Doc. 16 at 20. But § 1053(a)'s non-forfeitability protection applies to individuals who participate in a plan for at least five years. *See* § 1053(a)(2)(A)(ii); *Masten*, 543 F. Supp.

3d at 36.  Ms. Franklin has alleged that she retired after working for Duke "for approximately 18 years," Doc. 1 at ¶ 25, that she is a vested participant in the Plan, *id.* at ¶ 4, and that the defendants started providing her benefits on March 1, 2018.  *Id.* at ¶ 25.  At this stage, these allegations support a plausible inference that Ms. Franklin met the vesting requirement and was qualified to receive the Plan's default benefit.

The defendants also maintain that ERISA's non-forfeitability provision "does not guarantee a particular amount or a method for calculating the benefit."  Doc. 16 at 20–21 (quoting *Alessi*, 451 U.S. at 512).  That is true, but the Supreme Court in *Alessi* also recognized that "Congress in ERISA set outer bounds on permissible accrual practices . . . and specified three alternative schedules for the vesting of pension rights."  451 U.S. at 512.  Courts have held that excessive actuarial reductions may breach these outer bounds and constitute forfeitures under § 1053(a).  *See Masten*, 543 F. Supp. 3d at 36 ("[T]he allegations here – reduction in benefits based on unreasonable actuarial conversion – state a violation of ERISA's non-forfeiture requirements."); *Torres v. Am. Airlines, Inc.*, 416 F. Supp. 3d 640, 650 (N.D. Tex. 2019) ("Improper actuarial adjustments that reduce a pension's value is a forfeiture under ERISA § [1053(a)].).  Here, too, as discussed *supra*, Ms. Franklin has alleged facts sufficient to draw the inference that the defendants used outdated formulas that underestimated the value of her accrued benefits and constituted an unreasonable actuarial conversion.

Ms. Franklin has stated a claim for relief on behalf of the Plan under ERISA's anti-forfeiture provision.  Count Two, Doc. 1 at ¶¶ 108–15, may proceed to the extent that claim is made on behalf of the Plan under § 1132(a)(2).

### C. Breach of Fiduciary Duty Claim

ERISA imposes specific fiduciary duties on a person who exercises discretionary authority over a benefit plan's management, assets, and administration as a fiduciary. *See* § 1104, § 1002(21)(A). By statute, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." § 1104(a)(1). They also must act with "care, skill, prudence, and diligence under the circumstances," § 1104(a)(1)(B), and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." § 1104(a)(1)(D). To state a breach of fiduciary duty claim, the plaintiff must allege that: "(1) the Plan is governed by ERISA; (2) Defendants were fiduciaries of the Plan; and (3) Defendants breached their duties . . . under ERISA." *Jones v. Coca-Cola Consol., Inc.*, No. 20-CV-654, 2021 WL 1226551, at *4 (W.D.N.C. Mar. 31, 2021).

Ms. Franklin has adequately stated a claim for breach of fiduciary duty. First, she alleges that ERISA governs the Plan. *See, e.g.*, Doc. 1 at ¶¶ 2, 27, 118. Second, she alleges that the defendants are fiduciaries under ERISA because they exercise discretionary authority of the Plan's management and assets. *See id.* at ¶¶ 119, 124. And she alleges that the Board and its members breached their duties "by administering a Plan that did not conform with ERISA's actuarial equivalence requirements," *id.* at ¶ 120, and that Duke breached its duty "to monitor the actions of the Board to ensure it complied with ERISA." *Id.* at ¶¶ 122–23, 125.

The defendants contend that Ms. Franklin's breach of fiduciary duty claim is derivative of her actuarial equivalence requirement claim under § 1055 and that it must

be dismissed along with the § 1055 claim.  *See* Doc. 16 at 21.  But, as already discussed, Ms. Franklin has adequately stated a § 1055 claim.  *See supra*.

The defendants also maintain that ERISA does not impose a "fiduciary duty to refuse to follow plan terms that are inconsistent with ERISA," citing three out-of-circuit district court decisions.  Doc. 16 at 21–22.  District courts within this circuit have held otherwise.  *See Pender v. Bank of Am. Corp.*, 756 F. Supp. 2d 694, 704 (W.D.N.C. 2010) ("A fiduciary has a duty to ignore a plan term that is inconsistent with ERISA if implementing that term is contrary to a participant's interest"); *see also Feinberg v. T. Rowe Price Grp., Inc.*, No. 17-CV-427, 2018 WL 3970470, at *6 (D. Md. Aug. 20, 2018) (finding that adherence to plan provision "does not provide a blanket defense for the Plan Trustees" facing violation of fiduciary duty claims).  And even one of the opinions defendants cite, *Cement & Concrete Workers Dist. Council v. Ulico Cas. Co.*, states, "[o]f course, a trustee may not hide behind the terms of the trust documents to protect himself from liability where there is an inherent inconsistency between a provision in a plan document and a fiduciary duty expressed elsewhere in ERISA."  387 F. Supp. 2d 175, 184–85 (E.D.N.Y. 2005) (internal quotation marks omitted), *aff'd*, 199 F. App'x 29 (2d Cir. 2006).

Ms. Franklin has stated a plausible breach of fiduciary duty claim on behalf of the Plan because she has alleged that ERISA governs the Plan and that the defendants are fiduciaries who have not performed their duties required by § 1104.  Ms. Franklin's breach of fiduciary duty claim, Count Three, Doc. 1 at ¶¶ 116–30, may proceed, to the extent that claim is made on behalf of the Plan under § 1132(a)(2).

10

### III. Motion to Dismiss the § 1132(a)(3) Claims

This Order does not decide the motion to dismiss as to Ms. Franklin's § 1132(a)(3) claims; proceedings on those claims have been stayed by separate order entered this day. That portion of the motion remains pending.

It is **ORDERED** that:

1. The defendants' Rule 12(b)(6) motion to dismiss the plaintiff's § 1132(a)(2) claims, Doc. 15, is **DENIED**.

2. The Rule 12(b)(6) motion to dismiss the plaintiff's § 1132(a)(3) claims, Doc. 15, remains pending while these claims are stayed.

3. As required by Federal Rule of Civil Procedure 12(a)(4)(A), the defendants shall file an answer to the parts of the complaint addressed to the § 1132(a)(2) claims within 14 days and may defer responding to any aspect of the complaint addressing only the § 1132(a)(3) claims. The case is referred to the Magistrate Judge for an initial pretrial scheduling order.

This the 23rd day of April, 2024.

_____
UNITED STATES DISTRICT JUDGE