IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOY G. FRANKLIN, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:23-CV-833 |
| DUKE UNIVERSITY, THE RETIRMENT BOARD FOR DUKE UNIVERSITY, and JOHN/JANE DOES 1-10, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION, ORDER, and JUDGMENT**

Catherine C. Eagles, Chief District Judge.

While this matter was on interlocutory appeal, the parties in this putative ERISA class action agreed to settle the case. In October 2025, the Fourth Circuit granted a limited remand of the defendants' pending interlocutory appeal, and this Court granted preliminary approval of the class settlement. Notice has been given to the class, and the plaintiff has moved for final approval of the settlement terms under Federal Rule of Civil Procedure 23.

A hearing on the motion for final approval was held on January 21, 2026. The Court has considered the record, including the lack of objection by any potential class members, the proposed settlement agreement, the supporting documents and evidence, and the statements of counsel at the final approval hearing and at previous hearings. The

Court finds that the proposed settlement meets the requirements of Rule 23 and gives the settlement final approval.

I.   Background

The named plaintiff and putative class representative, Joy Franklin, was a Duke University employee for about 18 years. Doc. 1 at ¶ 25. When she retired, she became a participant in the university's employee retirement plan. *Id.* Duke's retirement plan provides participants with pension benefits in the form of annuities. *Id.* at ¶ 6.

The default benefit for married participants is a Joint and Survivor Annuity, or JSA, which provides the retiree with a monthly annuity for her life and, when she dies, a contingent annuity for the life of her spouse or beneficiary. *Id.* at ¶¶ 6–7. The monthly amount received by the participant under a JSA and similar Qualified Joint and Survivor Annuity, or QJSA, is lower than the amount received by someone receiving a Single Life Annuity, since the plan must account for paying benefits for two lives rather than one. *Id.* at ¶¶ 8–9. Ms. Franklin receives her benefits under a QJSA. *Id.* at ¶ 25.

Ms. Franklin alleged that the defendants used outdated and unreasonable actuarial equivalency formulas in violation of ERISA's actuarial equivalence requirement. *Id.* at ¶¶ 102–04. By using these formulas to calculate benefits, Duke was able to retain money it should have contributed to the plan. *Id.* at ¶ 120. It also resulted in reduced payments by millions of dollars to as many as 7,500 plan participants. *Id.* at ¶¶ 1, 88–89, 101. The use of the outdated and unreasonable formulas reduced Ms. Franklin's monthly benefit by $64.32 and the present value of her benefits by approximately $10,309. *Id.* at ¶ 85. Ms. Franklin alleges that this conduct violates ERISA in three specific ways:

1) it violates ERISA's actuarial equivalence requirement, *Id.* at ¶¶ 100–07,

2) it violates ERISA's anti-forfeiture rules, *Id.* at ¶¶ 108–15, and

3) it breaches the defendants' fiduciary duties. *Id.* at ¶¶ 116–30.

For each of the three alleged violations, Ms. Franklin brought claims under both 29 U.S.C. § 1132(a)(2) on behalf of the plan and under § 1132(a)(3) individually and on behalf of a putative class.

The defendants moved to dismiss some of Ms. Franklin's claims. They asserted that she lacked standing to sue on behalf of the plan and that her individual and class claims were subject to a binding arbitration provision. Doc. 15. Alternatively, they moved to dismiss the entire case for failure to state a claim. *Id.* The Court found that Ms. Franklin had standing and held that the arbitration provision was unenforceable under North Carolina law. Doc. 29. The defendants filed an interlocutory appeal as of right directed to the arbitration issue, Doc. 30, and the Court stayed the § 1132(a)(3) claims pending appeal. Doc. 40. While the §1132(a)(3) claims were stayed, the Court denied the defendants' remaining motion to dismiss as to Ms. Franklin's § 1132(a)(2) claims. Doc. 41.

The parties continued mediation efforts and reached a settlement agreement in September 2025. Doc. 64 at ¶¶ 18–19. The Fourth Circuit then agreed to remand the case for the purpose of settlement approval. Doc. 57. On October 14, 2025, the Court granted limited preliminary class settlement approval, approved a class notice procedure, and scheduled the final fairness hearing. Doc. 58. The class members received notice of the settlement, Doc. 64-2 ¶¶ 6–9, and no class member has objected. Doc. 64 at ¶ 38.

3

The Court held the final fairness hearing on January 21, 2026. Minute Entry 01/21/2026. Plaintiff's counsel reviewed the class payment procedures and summarized why the settlement was fair and reasonable. The defendants were present through counsel. *Id.* They confirmed various details provided by plaintiff's counsel and did not object to settlement approval.

II.     **Certification of Settlement Classes**

When a settlement is reached before Rule 23 certification, a class may be certified solely for the purposes of settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 10-CV-10, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011); Fed. R. Civ. P. 23(e). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, plaintiffs "must affirmatively demonstrate their compliance" with Federal Rule of Civil Procedure 23. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up). District courts must rigorously assess the proffered evidence, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), but have "wide discretion" in evaluating whether Rule 23 requirements have been met. *Ward v. Dixie Na'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010).

The proposed class for settlement purposes is defined as follows:

> All participants and beneficiaries of the [Duke University Employees' Retirement] Plan who: (1) began receiving benefits on or after September 29, 2017 but before July 1, 2023, (2) are receiving a joint and survivor annuity with a spousal survivor benefit of at least 50% and no more than 100% of the benefit paid during the retiree's life, or are receiving a qualified

4

preretirement survivor annuity. Excluded from the Class are Defendants and any individuals determined to be fiduciaries of the Plan.

Doc. 55-4 at ¶ 2.6; *see also* Doc. 64 at ¶ 20.

### A. Threshold Requirements

As a threshold matter, Rule 23 requires the proposed class members to be readily identifiable or ascertainable and the proposed class representative to be a member of the proposed class. *See Peters v. Aetna Inc.*, 2 F.4th 199, 241–42 (4th Cir. 2021) (recognizing an "implicit threshold requirement" that class members be "readily identifiable"); *Amchem*, 521 U.S. at 625–26 ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (cleaned up)); *see also* Fed. R. Civ. P. 23(a). To be readily identifiable, plaintiffs do not need to be able to "identify every class member at the time of certification." *Krakauer v. Dish Network, L.L.C.* (*Krakauer II*), 925 F.3d 643, 658 (4th Cir. 2019) (cleaned up). Rather, a class need only be defined "in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member at some point." *Id.* (cleaned up); *see also Krakauer v. Dish Network L.L.C.* (*Krakauer I*), 311 F.R.D. 384, 393 (M.D.N.C. 2015) ("Ascertainability only requires that a court be able to identify the class members in reference to objective criteria." (cleaned up)).

Here, the class members are readily identifiable. The class is defined using objective criteria: whether participants or beneficiaries of Duke's employee retirement plan during the relevant timeframe were receiving one of the annuities at issue in this

case. *See* Doc. 55-4 at ¶ 2.6; Doc. 64 at ¶ 20. The defendants' records identify 724 class members. Doc. 64 at ¶ 21; Doc. 64-2 at ¶ 5.

Ms. Franklin, the representative plaintiff, is a part of the class. Doc. 1 at ¶ 25. She is a plan participant who elected the 50% QJSA offered by the plan with her husband as the beneficiary. *Id.* The threshold requirements are met.

### B. Rule 23(a)

Plaintiffs seeking class certification must meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Peters*, 2 F.4th at 241. These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Krakauer II*, 925 F.3d at 654 (cleaned up).

#### 1. Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "no specified number is needed to maintain a class action, a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (cleaned up).

Here, the defendants' records identify 724 potential class members. Doc. 64-2 at ¶ 5. Joinder of that many plaintiffs would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is met.

#### 2. Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the plaintiff

6

must "demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (cleaned up). "Even a single common question will do," *id.* at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (cleaned up); *see also Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023) ("Commonality requires an entire set of claims depend upon a common contention that is capable of class wide resolution." (cleaned up)).

Here, common questions of law and fact exist. The plaintiff's central allegation is that the defendants used outdated and unreasonable actuarial assumptions when converting single life annuities into joint and survivor annuities and that these assumptions resulted in benefit plans that were not actuarily equivalent, in violation of 29 U.S.C. § 1055(d). Doc. 1 at ¶¶ 14–16, 87. The plaintiff alleges that the benefit calculations were performed uniformly across the plan. *Id.* at ¶ 87. There are at least three questions of law or fact common to all class members: (1) whether the defendants' actuarial assumptions were reasonable, (2) whether the defendants' conversion methodology rendered the plans actuarially equivalent, and (3) whether the defendants' conversion methodology violated ERISA. The commonality requirement is met.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same

7

Case 1:23-cv-00833-CCE-JLW    Document 70    Filed 01/26/26    Page 7 of 17

course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). This requirement "goes to the heart of a representative parties' ability to represent a class," and the named plaintiff's interest in prosecuting its case "must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). But the claims of the class representative and the claims of the class need not "be perfectly identical or perfectly aligned." *Id.* at 467.

Here, the claims of the named plaintiff, Ms. Franklin, are typical of the claims of the class members. Her claim, like those of the class members, arises out of the defendants' actuarial assumptions used to convert SLAs into JSAs and QJSAs. Doc. 1 at ¶ 85. The named plaintiff also advances the interest of the absent class members, because she alleges the same injuries and legal harms any class member would raise. The typicality requirement is met.

    **4.    Adequacy of Representation**

Rule 23(a) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," as well as to assess the "competency and conflicts of class counsel." *Amchem*, 521 U.S. at 625, 626 n.20; *see also Wal-Mart*, 564 U.S. at 349 n.5; *Carolina Youth*, 60 F.4th at 780. There are two components to the adequacy requirement: "(1) the interests of the proposed class representatives and class members must coincide; and

(2) the plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 308 (D. Md. 2022).

First, there is no meaningful actual or potential conflict of interest between Ms. Franklin and the settlement class members. Ms. Franklin is a member of the class she seeks to represent, possesses the same interests as the class, alleges that she suffered the same injury as the proposed class members because of the defendants' ERISA violations, and seeks the same remedies as the class. Doc. 1 at ¶¶ 25, 62–63, 78–87, 107, 115, 130.

Ms. Franklin is seeking a service award of up to $5,000. Doc. 65 at 1; Doc. 64 at ¶ 29. A service award does not create a conflict of interest if the requested amount is not excessive, *see Galloway v. Williams*, No. 19-CV-470, 2020 WL 7482191, at *12 n.11 (E.D. Va. Dec. 18, 2020) (citing William B. Rubenstein, 5 *Newberg & Rubenstein on Class Actions* § 17.18 (5th ed.)), and here it certainly is not.

Second, the legal representatives are adequate. Plaintiff's counsel, Oren Faircloth, David Disabato, and Dana Smith, have substantial experience and expertise in complex class actions, including ERISA cases. Doc. 64 at ¶ 39; Doc. 64-1.

Ms. Franklin has served as an adequate lead plaintiff. Plaintiff's counsel is qualified and able to conduct the legal representation. The requirements of Rule 23(a)(4) are met.

C. **Rule 23(b)**

Plaintiffs pursuing a class action must also establish that the case fits into at least one of the three subsections of Rule 23(b). *Comcast Corp.*, 569 U.S. at 33. The plaintiff here relies on Rule 23(b)(1), Doc. 63 at 41–42, which requires the plaintiff to show that

9

"prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1) (cleaned up). "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike, or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (cleaned up).

Here, inconsistent individual adjudications of the benefit conversion method would force the defendants to choose between treating plan beneficiaries differently, which ERISA forbids, and defying court orders. That situation is precisely what Rule 23(b)(1)(A) is designed to prevent. *See, e.g.*, *McAlister v. Metro. Life Ins. Co.*, No. 18-CV-11229, 2023 WL 5769491, at *8 (S.D.N.Y. Sep. 7, 2023). The requirements for class certification under Rule 23(b)(1) are met.

For purposes of this settlement, the Court will certify the class as defined in the settlement agreement, Doc. 55-4 at ¶ 2.6, certify Ms. Franklin as class representative, and appoint plaintiff's counsel as class counsel.

### III. Approval of Final Settlement

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *accord Reed v. Big Water Resort, LLC*, No. 14-CV-1583, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016); William B. Rubenstein, 4 *Newberg & Rubenstein on Class Actions* § 13:44 n.1 (6th ed. 2025) (collecting cases).

A court can only approve a class action settlement "after a hearing" and only if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts in this circuit "bifurcate[] the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 06-CV-400, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)); *accord Roldan v. Bland Landscaping Co.*, No. 20-CV-276, 2022 WL 17824035, at *2 (W.D.N.C. Dec. 19, 2022).

## A. Fairness

The fairness analysis aims "to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (cleaned up). Courts apply a four-factor test to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of" law at issue. *Id.* (cleaned up).

All four fairness factors support approval here. This case has been vigorously litigated over the course of more than two years, including dispositive motions practice, an interlocutory appeal, and multiple mediation sessions. Doc. 64 at ¶¶ 10–19.

Although fact discovery was somewhat limited, the defendants produced the critical plan data the plaintiff needed to calculate the extent of class damages. *Id.* at ¶ 16.

11

This information, in conjunction with publicly available actuarial data, *see generally* Doc. 1, enabled all parties to develop a thorough understanding of the key issues and the relative strength of their cases. Doc. 64 at ¶ 16.

When the settlement was proposed, the defendants' appeal of the denial of their motion to compel arbitration was pending before the Fourth Circuit and the proceedings in this Court were stayed. Docs. 30, 45. It was clear that resolution on the merits was likely to take a long time.

The attorneys representing the class have experience in class litigation. Doc. 64-1. They have previously litigated similar actuarial equivalence cases. Doc. 64 at ¶ 39.

The parties engaged in settlement negotiations at arm's length. *Id.* at ¶ 18. They negotiated with the assistance of an experienced ERISA mediator at an all-day mediation, which resulted in an agreement in principle. *Id.* The parties then ironed out the details over several months. *Id.* at ¶ 19. There is no evidence or indication of collusion.

The Court finds that the final settlement was reached fairly.

**B.     Adequacy and Reasonableness**

Courts assess the adequacy of a settlement through the following factors:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*In re Jiffy Lube*, 927 F.2d at 159; *accord 1988 Tr.*, 28 F.4th at 526. Courts examine "the amount of the settlement" and ensure the amount offered "is commensurate with the scale

of the litigation and the plaintiffs' chances of success at trial." *1988 Tr.*, 28 F.4th at 527.

Here, the relevant factors support approval. The proposed settlement awards the class roughly 17% of the plaintiff's calculated class wide damages. Doc. 64 at ¶ 16. That percentage of recovery is marginally lower than similar ERISA cases, *see id.* at ¶ 44, but the plaintiff here faces unusually strong headwinds if litigation continues. For one, as the Court highlighted to the parties, subsequent North Carolina Supreme Court precedent may have altered the analysis of the arbitration provision at issue in the defendants' pending appeal. *See* Text Order 05/28/2024. Even if the defendants' appeal were to prove unsuccessful, the plaintiff could not be certain of success on the merits, given the complex and expert-dependent nature of ERISA cases in general and actuarial equivalence cases in particular. Continuing the litigation would also be expensive. Plaintiff's counsel recognizes these risks and recommends approval of the class settlement. Doc. 64 at ¶ 41.

Certain types of ERISA litigation settlements, including the one proposed here, require the approval of an independent fiduciary. *See* 29 U.S.C §§ 1106, 1108; Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (Dec. 31, 2003); Amendment to Prohibited Transaction Exemption 2003-39, 75 Fed. Reg. 33830 (June 15, 2010). An independent fiduciary has reviewed the settlement and approved its terms on behalf of Duke's retirement plan. Doc. 64-3.

The motion for preliminary approval was unopposed, Doc. 51, as is the motion for final approval. Doc. 62. Class notice was provided under Rule 23(c)(2)(a). Doc. 58 at 5–6. The settlement administrator has received about 55 inquiries from class members

13

seeking more information. Doc. 64 at ¶ 38. All but three of the class members received direct and personal notice, Doc. 64-2 at ¶ 9, and there have been no objections. Doc. 64 at ¶ 38. The structure of the settlement means that no claim forms are required: class members will simply receive their increased monthly benefits through the defendants' existing system. *Id.* at ¶ 45.

The Settlement provides meaningful relief to the Class, treats all Class Members equitably, and avoids the costs, risks, and delay of further litigation. Given the degree of uncertainty over whether the plaintiff can prevail, the difficulties, delays, and costs associated with pursuing the litigation further, and the benefits to the class members from the amount of the recovery provided by the settlement, the Court finds that the final settlement is fair, adequate, and reasonable.

## IV. Class Action Fairness Act

Under 28 U.S.C. § 1715(b), within 10 days of a proposed settlement of a class action being filed in court, each defendant must serve upon appropriate state and federal officials notice of the proposed settlement. The defendants served the required notice on October 24, 2025. *Id.* at ¶ 32.

## V. Conclusion

Final certification of the class and approval of the class action settlement is appropriate. The requirements of Rule 23 are met, and the settlement is in the best interests of the class members. Final judgment is entered concurrently. The Court will address the plaintiff's pending motion for attorneys' fees in a separate order.

For these reasons and based on the record before the Court, it is **ORDERED and ADJUDGED** that:

1. The plaintiff's motion for final approval of class settlement, Doc. 62, is **GRANTED**.

2. The defendants' motion to dismiss, Doc. 15, is **DENIED** as moot.

3. For purposes of this settlement, the Court finally certifies the class defined in the Settlement agreement, Doc. 55-4 at ¶ 2.6, certifies Ms. Franklin as class representative, and confirms the appointment of Ms. Franklin's counsel as class counsel.

4. The plaintiff and all settlement class members are deemed to have completely released and forever discharged the Released Parties for the Released Claims. The full terms of the release described in this paragraph are set forth in the settlement agreement and are specifically incorporated herein by reference.

5. Neither Defendants nor Defense Counsel shall have any responsibility for or any liability for any act, omission, or determination of Class Counsel in connection with:

    a. the administration of the Gross Settlement Amount or otherwise;

    b. the calculation of Class Members' Individual Monthly Benefit Adjustments; or

c. the payment or withholding of any taxes, tax reporting, or the filing of any returns in connection with the Individual Monthly Benefit Adjustments.

6. The Released Parties shall not have any responsibility for or liability whatsoever with respect to errors in the determination or calculation of the Individual Monthly Benefit Adjustments or disputes regarding the reasonableness of such increases, which are based on allocations and calculations provided by Class Counsel and their expert.

7. Neither this Order, the Settlement Agreement, nor any related negotiations or proceedings shall be construed as an admission or concession by Defendants or any Released Party of any liability, fault, or wrongdoing, or as an admission by Plaintiff or the Class of any lack of merit in their claims.

8. The Settlement Agreement, and any related acts, documents, negotiations or proceedings, shall not be used or offered or received in evidence in any action or proceeding, except as necessary to enforce the terms of the Settlement Agreement or arising out of or relating to the Final Approval Order of the Settlement.

9. The Court retains continuing jurisdiction over the Settlement, the administration of the Settlement Agreement, and any disputes arising out of or related to the Settlement or this Order.

10. The operative Complaint and all claims asserted therein in the Action are hereby **DISMISSED** with prejudice, without costs to any of the Settling

Parties except as provided in the Settlement Agreement. Upon entry of this Order, all Class Members and the Plan shall be bound by the Settlement Agreement (including any amendments) and by this Order.

This the 26th day of January, 2026.

_____
UNITED STATES DISTRICT JUDGE