IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOY G. FRANKLIN, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:23-CV-833 |
| DUKE UNIVERSITY, THE RETIREMENT BOARD FOR DUKE UNIVERSITY, and JOHN/JANE DOES 1 – 10, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

In this ERISA class action, the Court has granted final approval of the parties' settlement agreement. Class counsel and the plaintiff also move for attorneys' fees, costs, and a class representative service award. Specifically, they seek $775,500 in fees and costs for counsel and a $5,000 service award for the named plaintiff. Because the requested attorneys' fees, costs, and service award are reasonable considering the relevant factors, the motion will be granted.

I.    Background

The named plaintiff and class representative, Joy Franklin, is a former employee of Duke University who now receives a pension from the school's employee retirement plan. Doc. 1 at ¶ 25. In her complaint, she alleged that the plan used outdated and unreasonable actuarial equivalency formulas to calculate annuities for participants like

her, whose benefits extended through the life of their spouse, and that this violated ERISA. *Id.* at ¶¶ 6–9, 14, 102–04. Following extensive litigation and while most of the case was stayed pending an interlocutory appeal, the parties agreed to settle.[1] The settlement awarded the class roughly 17% of the plaintiff's calculated classwide damages. Doc. 64 at ¶ 16. The settlement will take the form of increased annuity payments made to eligible plan participants rather than a lump sum, with a discounted present settlement value of $2,350,000. Doc. 55-4 at ¶¶ 2.21, 5.1. After granting preliminary approval, Doc. 58, and holding a fairness hearing, Minute Entry 01/21/2026, the Court gave final approval to the settlement. Doc. 70.

Class counsel and the plaintiff seek an award of attorneys' fees and costs totaling $775,500. Doc. 65 at 1. This represents 33% of the discounted gross settlement amount. *Id.* They also seek a service award of $5,000 for Ms. Franklin as the class representative. *Id.* The defendants have not opposed the motion. Class members were notified that class counsel could seek an attorneys' fee of up to one-third, and no class member objected to the settlement or expressed concerns about the fee provision.

## II. Attorneys' Fees

### a. Legal Standard

In a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts calculate attorneys' fees in class actions using either the "lodestar" method or the

---

[1] The order granting final approval of the class settlement provides a more comprehensive procedural history. *See* Doc. 70 at 2–4.

"percentage of fund" method. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009). In a common fund case, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fourth Circuit does not require the use of the percentage of fund method, but district courts in this circuit overwhelmingly apply it. *See Phillips v. Triad Guar. Inc.*, No. 09-CV-71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); *see also Jones*, 601 F. Supp. 2d at 758–59 (collecting cases).

To determine the reasonableness of the fee award, courts assess the factors identified in *Barber v. Kimbrell's, Inc.* or a variant of those factors. *See* 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Phillips*, 2016 WL 2636289, at *3–4. The *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d at 226 n.28 (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)). Courts do not apply these factors in "a formulaic way" because each case is different. *Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 771 (D. Md. 2022) (cleaned up).

3

Courts often use the lodestar method to cross-check the reasonableness of a percentage fee, *Jones*, 601 F. Supp. 2d at 759–60 (collecting cases), comparing the requested contingent fee award against a fee calculated based on hours spent at prevailing market rates. *See Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 462 (D. Md. 2014). "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Id.* at 467. To determine the lodestar, courts multiply the reasonable hourly rate for each attorney by the number of hours reasonably expended. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). A lodestar multiplier is then calculated by dividing the requested fee by the lodestar. *See generally* William Rubenstein, 5 Newberg & Rubenstein on Class Actions § 15:85 (6th ed. 2025) (giving the example of a $25 million requested fee divided by a $10 million lodestar, resulting in a multiplier of 2.5).

When courts use the lodestar method only as a cross-check, they need not "exhaustively scrutinize" the hours documented by counsel and "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (cleaned up). Usually, a reasonable rate is calculated by looking at the local market, *see Burrs v. United Tech. Corp*, No. 18-CV-491, 2019 WL 1430258, at *1 (M.D.N.C. Mar. 29, 2019), but a national market rate is appropriate for matters involving complex issues requiring specialized expertise, such as ERISA class actions. *See Kruger v. Novant Health, Inc.*, No. 14-CV-208, 2016 WL 6769066, at *4 (M.D.N.C. Sep. 29, 2016).

b. Analysis

The Court has considered the twelve *Barber* factors and finds that the request for a fee of $775,500, reflecting one-third of the gross settlement fund, is reasonable. To date, class counsel has spent over 700 hours of attorney and legal professional time on this matter, a significant investment of labor and resources. *See* Doc. 67 at ¶ 16. ERISA litigation is a "rapidly evolving and demanding area of law" in which "new precedents are frequently issued. *In re Wachovia Corp. ERISA Litig.*, No. 09-CV-262, 2011 WL 5037183, at *4 (W.D.N.C. Oct. 24, 2011) (cleaned up). This, and the "significant risk of nonpayment" in ERISA matters generally, *see Kruger*, 2016 WL 6769066, at *4, tend to indicate that recovery requires navigating novel issues and applying specialized skills. That is particularly true of actuarial equivalence cases. *See Scott v. AT&T Inc.*, 790 F. Supp. 3d 781, 791 (N.D. Cal. 2025) (explaining the complexity of these cases and noting that "actuarial equivalent remains a term of art subject to factual disputes about its established meaning within the field." (cleaned up)). Class counsel credibly testifies that taking on this complex class action represented a significant opportunity cost that precluded work on other matters. Doc. 67 at ¶ 11.

A one-third fee is consistent with the usual compensation for work done in complex ERISA matters such as this and reflects the customary fee for like work. *See, e.g.*, *Kruger*, 2016 WL 6769066, at *2. Class counsel took this case on a contingency fee basis, Doc. 67 at ¶ 11, so the fee award aligns with their expectations at the outset of the litigation. Class counsel obtained a meaningful degree of success on behalf of the class. The gross settlement fund amounts to approximately 17% of the plaintiff's estimated

5

Case 1:23-cv-00833-CCE-JLW    Document 71    Filed 01/27/26    Page 5 of 9

classwide damages. Doc. 64 at ¶ 16. That percentage of recovery is slightly lower than other ERISA actuarial equivalence cases, *see id.* at ¶ 44 (collecting cases), but that lower percentage captures the specific risks that the class's case would have faced at all remaining litigation stages. *See generally* Doc. 70 at 13 (summarizing some of the hurdles to recovery).

Class counsel has skill and experience in litigating sophisticated ERISA class actions. *See* Doc. 64 at ¶ 39 & n.1–3; Doc. 64-1; Doc. 67 at ¶ 7. To obtain a successful result for the class here, class counsel required not only a deep knowledge of ERISA and how pension plans work but also an understanding of the Federal Arbitration Act and related state law, along with skills in handling appeals. A one-third fee reflects a reasonable attorneys' fee in this matter, which involved complex areas of law and less than certain odds of recovery.

The lodestar cross-check also supports the reasonableness of the requested fee. Class counsel has submitted evidence that in this case they spent approximately 600 hours of attorney time and 100 hours of non-attorney professional time. Doc. 67 at ¶ 16 (table). If they were to bill for their services based on time spent, the attorneys would bill at rates between $840 and $1,145 per hour, and its non-attorney professionals billed at rates between $260 and $325 per hour. *Id.* When adjusted for inflation, those rates are in line with rates approved in similar cases in this district, *see Kruger*, 2016 WL 6769066, at *4, and class counsel testifies that they are similar to or lower than the rates charged by other firms in comparable cases. Doc. 67 at ¶ 18; *see also Goldberger*, 209 F.3d at 50 (explaining that less scrutiny of the lodestar is necessary when it is only used as a cross-

6

Case 1:23-cv-00833-CCE-JLW     Document 71     Filed 01/27/26     Page 6 of 9

check). The defendant, through counsel, agrees that the rates are not higher than what attorneys in major markets charge in complex civil litigation.

The lodestar amount, using these hours and rates, comes out to $591,294. Doc. 67 at ¶ 16. Dividing the requested fee of $775,500 by this lodestar amount gives a lodestar multiplier of approximately 1.3. That is a relatively low multiplier in this context, showing the requested fee is not excessive. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."). The lodestar cross-check confirms that the requested attorneys' fees are reasonable.

The motion for attorneys' fees will be granted.

### III. Costs

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-CV-187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007) (cleaned up). Reimbursable expenses include expert fees, travel, long-distance and conference telephone, postage, delivery services, settlement costs, and computerized legal research. Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed. 2025); *Phillips*, 2016 WL 2636289, at *9; *Spano v. Boeing Co.*, No. 06-CV-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016).

Class counsel has submitted evidence showing they spent $54,013.54 for reimbursable expenses. Doc. 67 at ¶ 13; Doc. 67-1. This amount includes the costs of

7

hiring actuarial experts; taking depositions; travel, lodging, and parking; communication and filing costs; and mediation and settlement costs, among others. Doc. 67-1.

The Court has reviewed the expenses and the supporting documentation and finds that the expenses were reasonable. The motion will be granted.

### IV. Service Award

At the end of a successful class action, it is common for trial courts to compensate class representatives for some of the time and effort they invested to benefit the class. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Ms. Franklin requests a service award of $5,000 in recognition of her time, effort, and contributions to the success of the case. Doc. 65 at 1.

Class counsel testifies that Ms. Franklin assisted "in the investigation of the case, maintaining contact with Class Counsel, reviewing the pleadings, answering Class Counsel's many questions, communicating with Class Counsel during and following the Settlement negotiations, and reviewing the terms of the Settlement Agreement." Doc. 67 at ¶ 21. The requested award is small relative to the amount of the class recovery, reasonable based on Ms. Franklin's work on behalf of the class, and consistent with other service awards approved in this district and throughout the Fourth Circuit. *See In re Novant Health, Inc.*, No. 22-CV-697, 2024 WL 3028443, at *13 (M.D.N.C. June 17, 2024) (collecting cases).

V.  **Conclusion**

The Court finds that the plaintiff's unopposed motion for attorneys' fees, costs, and a service award for the named plaintiff is well-supported and reasonable. Accordingly, it is **ORDERED** that:

1. The plaintiff's motion for attorneys' fees, costs, and a service award, Doc. 65, is **GRANTED**.
2. Class counsel is entitled to attorneys' fees and costs in the amount of $775,500, to be paid from the settlement fund.
3. A service award of $5,000 shall be paid to the named plaintiff Joy Franklin, also to be paid from the settlement fund.

This the 27th day of January, 2026.

_____
UNITED STATES DISTRICT JUDGE